UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

1-29-2013
**FILED**
JAN 29 2013
MAGISTRATE JUDGE
YOUNG B. KIM

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 13 CR 35 |
| v. ) | |
| ) | Judge Young B. Kim |
| VICKIE L. JOHNSON ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO, and defendant VICKIE L. JOHNSON, and her attorney, EZRA HEMPHILL, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The information in this case charges defendant with theft of government funds, in violation of Title 18, United States Code, Section 641.

3. Defendant has read the charge against her contained in the information, and that charge has been fully explained to her by her attorney.

4. Defendant fully understands the nature and elements of the crime with which she has been charged.

### Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with stealing, purloining, and knowingly converting to her own use money of the United States, namely, approximately $900 in funds

administered by the Federal Emergency Management Agency in the form of temporary rental assistance, which funds defendant was not entitled to receive, in violation of Title 18, United States Code, Section 641.

## Factual Basis

6. Defendant will plead guilty because she is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about December 2, 2010, at Plainfield, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant VICKIE JOHNSON ("JOHNSON") stole, purloined, and knowingly converted to her own use money of the United States, namely, not more than $1,000 in funds administered by the Federal Emergency Management Agency ("FEMA") in the form of temporary rental assistance, which funds defendant was not entitled to receive, in violation of Title 18, United States Code, Section 641.

Specifically, on August 19, 2010, President Obama signed a major disaster declaration covering parts of the Chicago area that allowed FEMA to provide a variety of disaster relief benefits, including temporary rental assistance, to individuals and families that could not access their pre-disaster primary residence due to a disaster. Applicants seeking such financial assistance were required to certify that they could not access their pre-disaster primary residence due to a disaster and document their alternative living arrangements.

In October 2010, JOHNSON, who resided in Plainfield, Illinois, at the time, submitted an application to FEMA seeking disaster relief benefits following severe storms and flooding in the Chicago area in or about July 2010. On her initial application, JOHNSON represented that her primary residence, located in Plainfield, Illinois, was damaged during the storms and flooding in July 2010.

Later, on October 21, 2010, FEMA informed JOHNSON that she was ineligible to receive FEMA disaster relief benefits because her residence was not located within the designated disaster area.

On October 26, 2010, JOHNSON called FEMA and falsely represented that she had listed the wrong address on her FEMA disaster benefits application. JOHNSON stated that she would submit to FEMA the correct address.

On October 28, 2010, JOHNSON faxed to FEMA a letter falsely representing that she rented an apartment located on West Van Buren in Chicago and that the apartment was damaged during the July 2010 storms and flooding. JOHNSON also included with her letter to FEMA: (1) a fabricated lease for the West Van Buren apartment; and (2) a fabricated letter from her purported landlord. The fabricated lease falsely represented that in November 2009 JOHNSON entered into a one-year lease for the West Van Buren apartment for $750 per month. The fabricated letter from her purported landlord falsely represented that JOHNSON rented the West Van Buren apartment and was forced to relocate to another residence in July 2010 due to flood damage to the apartment. In fact, as JOHNSON well knew at the time she

submitted these documents to FEMA, she had resided in Plainfield since at least December 2008, and she has never rented the West Van Buren apartment.

Later, JOHNSON falsely represented to FEMA that she was forced to relocate to a hotel due to the damage to the West Van Buren apartment. JOHNSON faxed to FEMA a fabricated bill reflecting that she was forced to reside at a hotel from July 26, 2010, until August 27, 2010. JOHNSON also faxed to FEMA: (1) a fabricated Rental Agreement and Lease falsely representing that she entered into a one-year lease for her residence in Plainfield for $1,000 per month; and (2) fabricated receipts falsely representing that she had made rental payments for the Plainfield property. In fact, as JOHNSON knew at the time, she had never resided at the hotel, and she owned – and never rented – the Plainfield property. JOHNSON further submitted multiple declarations to FEMA in which she falsely certified that she could not "live in or access [her] pre-disaster primary home due to disaster."

Based on JOHNSON's false representations that she was forced to relocate from the West Van Buren apartment, FEMA electronically distributed funds in the form of temporary rental assistance benefits into her bank account. JOHNSON knew that she was not entitled to receive this temporary rental assistance. Nevertheless, JOHNSON withdrew and used, for her own personal benefit, the funds that FEMA deposited into her bank account.

In total, between November 2010 and May 2011, JOHNSON unlawfully converted to her own use a total of approximately $12,566 in temporary rental assistance from FEMA that she was not entitled to receive.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 1 year's imprisonment. This offense also carries a maximum fine of $100,000. Defendant further understands that the judge also may impose a term of supervised release of not more than one year.

    b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

    c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $25 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

5

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 2012 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level is 6, pursuant to Guideline § 2B1.1(a)(2).

ii. Pursuant to Guideline § 2B1.1(b)(1)(C), the offense level is increased by 4 levels because the offense of conviction and relevant conduct involved a loss of approximately $12,566, which is more than $10,000 but not more than $30,000.

iii. Pursuant to Guideline § 2B1.1(b)(12), the offense level is increased by 2 levels because the offense involved conduct described in 18 U.S.C. § 1040, namely, knowingly making materially-false, fictitious, and fraudulent statements and submitting materially-false, fictitious, and fraudulent documents in connection with a major disaster declaration.

iv. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested

financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

  c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 1, and defendant's criminal history category is I:

    i. On or about January 31, 2000, defendant was convicted of forgery in the Circuit Court of DuPage County, Illinois, and sentenced to 30 days' imprisonment. Pursuant to Guideline §4A1.2(e)(3), no criminal points are added for this sentence;

    ii. On or about April 24, 2001, defendant was convicted of forgery in the Circuit Court of DuPage County, Illinois, and sentenced to 30 months' probation. Pursuant to Guideline §4A1.1(c), defendant receives one criminal history point for this sentence; and

    iii. On or about January 11, 2008, defendant was convicted of criminal trespass to land in the Circuit Court of Will County, Illinois, and sentenced to one year of supervision. Pursuant to Guideline § 4A1.2(c)(1), no criminal points are added for this sentence.

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 10, which, when

combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 6 to 12 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

      e.      Defendant and her attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and they are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation, that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

      f.      Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall

8

not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10. Each party is free to recommend whatever sentence it deems appropriate.

11. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

12. Regarding restitution, defendant acknowledges that the total amount of restitution owed to FEMA is $1,000, minus any credit for funds repaid prior to sentencing, and that, pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

13. Defendant also agrees to pay additional restitution to FEMA arising from the relevant conduct set forth above, totaling $11,566, pursuant to Title 18, United States Code, §§ 3663(a)(3) and 3664. Accordingly, defendant agrees to pay restitution to FEMA totaling $12,566.

14. Restitution shall be due immediately and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), she is required to notify the Court and the United States Attorney's

Office of any material change in economic circumstances that might affect her ability to pay restitution.

15. Defendant agrees to pay the special assessment of $25 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17. This Agreement is entirely voluntary and represents the entire agreement between the Acting United States Attorney and defendant regarding defendant's criminal liability in case 13 CR 35.

18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

19. Defendant understands that by pleading guilty she surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charge against her, and if she does, she would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses, and her attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii. At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

  b. **Waiver of appellate and collateral rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the

sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) her attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

   c. Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her and the consequences of her waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

20. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall

fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against her and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

21. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

22. For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the

IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

23. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

24. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

25. Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations

on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void, and neither party will be bound to it.

27. Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

28. Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 1/29/13

_____  _____
GARY S. SHAPIRO                 VICKIE L. JOHNSON
Acting United States Attorney   Defendant

_____  _____
CHRISTOPHER J. STETLER          EZRA HEMPHILL
Assistant U.S. Attorney         Attorney for Defendant